**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronnell Eugene Pryor, Jr., | No. CV-23-01256-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ronnell Eugene Pryor, Jr., ("Plaintiff") challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 16), and Plaintiff's reply brief (Doc. 17), as well as the Administrative Record (Docs. 8-9, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I. Procedural History

On February 1, 2019, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on December 8, 2017. (AR at 13.)[1] The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id*.) On August 31, 2022, following a hearing, the ALJ issued an unfavorable

---

[1] Plaintiff filed a different application for benefits in October 2015, which was denied, but the ALJ found that the presumption of non-disability arising from that determination had been overcome. (AR at 13-14.)

decision. (*Id*. at 13-32.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.     Sequential Evaluation Process And Judicial Review

        To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

        An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citations omitted) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those

issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.    The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity between the alleged onset date (December 8, 2017) and his date last insured (December 31, 2020) and that Plaintiff had the following severe impairments: "degenerative disc disease; psoriatic arthritis; thumb osteoarthritis; chronic obstructive pulmonary disease/asthma; ulcerative colitis; depressive disorder; anxiety disorder; eczema; atopic dermatitis; psoriasis; and bilateral sensorineural hearing loss." (AR at 17.)[2] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 17-21.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he could perform work with no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional stooping, crouching, crawling, kneeling; occasional balancing as defined by the SCO; frequent bilateral handling and fingering; occasional exposure to excessive loud noise; occasional concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases; occasional concentrated exposure to poorly ventilated areas; occasional exposure to dangerous moving machinery; and occasional exposure to unprotected heights. He can perform work involving understanding, remembering, and carrying out simple instructions; work with occasional changes in a routine work setting; work with minimal, which is defined as fifteen percent of an eight-hour workday, in person interaction with the public; work with occasional interaction with co-workers, but no working in tandem or in teams; and work with frequent interaction with supervisors. He requires access to the restroom within fifty yards, but the need to use the restroom can be accommodated by the normal breaks.

(*Id.* at 21-22.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "medically determinable impairments could

---

[2] The ALJ also noted that, at times, Plaintiff had the impairments of hyperlipidemia, benign paroxysmal positional vertigo, and partially empty sella but concluded that those impairments were non-severe. (*Id.* at 17.)

reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 22-23.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) unidentified state agency medical consultants ("only partially persuasive"); (2) unidentified state agency psychological consultants ("generally persuasive" but "not wholly persuasive"); (3) Kenneth Littlefield, Psy.D., psychological consultative examiner ("not persuasive"); and (4) Stephanie Nicolai, Psy.D., treating provider ("not persuasive"). (*Id.* at 27-29.) Additionally, the ALJ considered a third-party source statement from Plaintiff's wife but found it unpersuasive. (*Id.* at 30.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff was incapable of performing any past relevant work, he was capable of performing various jobs that exist in significant numbers in the national economy, including retail marker, cleaner housekeeper, and routing clerk. (*Id.* at 30-31.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 31-32.)

IV.   Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ improperly discredited his symptom testimony; and (2) whether substantial evidence supports the ALJ's RFC determination. (Doc. 12 at 1.) As a remedy, Plaintiff seeks a remand for calculation of benefits or, in the alternative, a remand for further administrative proceedings. (*Id.* at 23.)

  A.   **Symptom Testimony**

   1.   Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v.*

1  *Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted).  Instead, the ALJ may
2  "reject the claimant's testimony about the severity of [the] symptoms" only by "offering
3  specific, clear and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d
4  487, 488-89 (9th Cir. 2015) (citation omitted).

2.  <u>The ALJ's Evaluation Of Plaintiff's Symptom Testimony</u>

The ALJ held that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR at 22-23.)  The ALJ then identified what the Court perceives to be four reasons for discounting Plaintiff's symptom testimony.  (*Id.* at 23-27.)[3]

The first reason, as noted, was inconsistency with the objective medical evidence. As to that issue, the ALJ grouped Plaintiff's symptoms and impairments into categories. As for Plaintiff's "allegations that his degenerative disc disease, psoriatic pain, and arthritic pain prevent him from doing all work-related tasks," the ALJ stated that those allegations were "not borne out by imaging," that "treaters described [Plaintiff's] psoriatic arthritis as stable with minimal breakthrough symptoms," and that "the preponderance of treating physician observations reflect minimal or no limitation on most occasions."  (*Id.* at 23.)  In other portions of the decision, the ALJ cited additional medical records reflecting benign findings regarding those symptoms and impairments.  (*Id.* at 25-26.)  Separately, as for the "intensity, persistence, and limiting effects that the claimant ascribes to his ulcerative colitis," the ALJ concluded that those allegations were "not supported by the record. Although the record reveals that ulcerative colitis was diagnosed in 1995, it was considered without severe complications prior to the date last insured.  Indeed, the claimant's reports

---

[3] The Court notes that the Commissioner construes these reasons as falling into slightly different categories. (Doc. 16 at 5 ["[The ALJ] provided the following reasons for discounting Plaintiff's testimony: (1) the objective medical evidence did not support the extent of his allegations; (2) Plaintiff's conservative treatment improved his symptoms; (3) certain inconsistencies between Plaintiff's subjective complaints and other evidence undermined his allegations; and (4) activities, such as his ability to move with his family out-of-state in 2016, playing basketball, and maintaining his yard, showed that he was not as limited as alleged."].)

to providers typically indicated that he had been doing well with no diarrhea, rectal bleeding, or abdominal pain." (*Id.* at 24-25.) Next, as for Plaintiff's "ongoing diagnosis of asthma/chronic obstructive pulmonary disease," the ALJ stated that "despite [Plaintiff's] reports of nightly symptom wheezing and breathing problems to the Social Security Administration," "he generally denied respiratory symptoms when seen by providers . . . and physical examination generally revealed normal oxygen saturation, respiratory rate, and respiratory effort without adventitious sounds through the date last insured and thereafter." (*Id.* at 25.) Finally, as for Plaintiff's "allegations of depression preventing him from leaving his home and with anxiety and panic attacks so severe that his driving and interaction with others is extremely limited," the ALJ concluded that those allegations were inconsistent with the objective medical evidence, which "reflects that his mental impairments and their effects are not as intense, persistent, or limiting as he alleges." (*Id.* at 26.) The ALJ added: "In addition to the frequency of normal findings by his providers, examination by at a consultative examination also revealed minimal abnormalities. There was no abnormality of thought process, his fund of knowledge was good, and intellect appeared at least average. He could remember three words after a delay and follow a three-step command. The claimant was verbal, friendly, cooperative, and easily engaged, and he made good eye contact." (*Id.* at 27.)

The second reason was that Plaintiff's symptoms improved with conservative treatment. For example, the ALJ stated that "it appears that [Plaintiff's] treatment regimen was generally effective in controlling pain and other symptoms. The claimant received relatively mild medications for pain and received injections in the back and neck to address the pain complaints. With respect to the psoriatic arthritis, the claimant had been taking prednisone for twenty years. With new medications for psoriatic arthritis becoming available, the claimant received relief from them. . . . Overall, such evidence demonstrates that the effects of [Plaintiff's] osteoarthritis and psoriatic arthritis are not as intense, persistent, or limiting as he alleges." (*Id.* at 23-24.) Separately, as for Plaintiff's mental impairments, the ALJ stated that "[h]is mental impairments were initially managed through

his primary care physician. In response to a May 2018 report of increased depression to his primary care physician, Sertraline was prescribed. By his next appointment, mood and affect were appropriate. Thereafter, there were minimal reports of mental health symptoms by the claimant or observation of such symptoms by his treaters. To be sure, the claimant even described his symptoms as stable. He exhibited only mild anxiety symptoms at his July 2019 consultative examination, despite his reports of incapacitating symptoms around crowds or outside the home. It was in August 2020, more than two years since he told his primary care physician that he was depressed, that the claimant first sought specific mental health treatment at Banner Health Center." (*Id.* at 26.)

The third reason was inconsistency with Plaintiff's activities. As for Plaintiff's complaints of pain and other physical problems, the ALJ stated that "[s]ignificantly there are reports that he helped move his family from out-of-state to Arizona and was able to walk around his home with his dogs. He also played basketball, even though he sometimes experienced increased joint pain afterward. He also reported that he could prepare simple meals, complete household chores, and even perform yard work, though he did report a need for rest while working on his yard. Significantly, the claimant testified that he waters his plants and maintains his yard, although he reported taking rest periods while gardening." (*Id.* at 26.) Separately, as for Plaintiff's mental impairments, the ALJ stated that Plaintiff's "activities also reflect fair retained function for mental activities. Despite describing social isolation and anxiety, he generally interacted well with providers, even when meeting them for the first time. Moreover, the claimant stated that he regularly goes out to dinner and talking to others. Reports also indicated activities involving retained cognitive function, including managing his finances, doing crossword puzzles, watching television programs, and reading. Thought [sic] after the date last insured, the claimant reported that he was busy, but that such a state was better for him." (*Id.* at 27.)

The fourth reason was failing to seek treatment and/or follow treatment recommendations. For example, with respect to Plaintiff's ulcerative colitis, the ALJ noted that "[t]he mildness of his condition is underlined by the claimant's rare need for treatment

as reflected by his not having seen a gastroenterologist for two years in January 2022." (*Id.* at 25.) Separately, as for Plaintiff's allegations of depression, anxiety, and panic attacks, the ALJ stated that "the record reflects inconsistent pursuit of treatment, with limited follow ups and less than full compliance. . . . [I]n August 2020, more than two years since he told his primary care physician that he was depressed, . . . the claimant first sought specific mental health treatment at Banner Health Center.  There, he was prescribed additional medications, which eventually he eventually ceased on his own accord because he did not like how it made him feel.  Several months after the date last insured, he reports that he felt he was not doing well after stopping his medications, but he did not restart them." (*Id.* at 26.)

                  3.        <u>The Parties' Arguments</u>

Plaintiff argues the ALJ failed to provide legally sufficient reasons for discrediting his symptom testimony.  (Doc. 12 at 13-20.)  As an initial matter, Plaintiff acknowledges that the ALJ "rejected [his] symptom testimony about his depression and anxiety" but argues that "[b]ecause this appeal is not based on [his] mental impairments, the ALJ's rejection of those portions of [his] symptom testimony is irrelevant."  (Doc. 12 at 14 n.6.)  Turning to the ALJ's finding of inconsistency with the medical evidence, Plaintiff argues that finding was flawed because the ALJ simply "summarized medical evidence from [his] prior treatment records, but . . . failed to connect the medical records to a specific inconsistency with any particular portion of [his] symptom testimony regarding his physical impairments."  (*Id.* at 14.)  In a related vein, Plaintiff accuses the ALJ of improperly cherry-picking certain records that showed normal findings or benign imaging "without evaluating how the positive findings in this record . . . failed to support [his] symptom testimony."  (*Id.* at 15-16.)  Plaintiff also contends the ALJ's focus on the supposedly "stable" nature of his psoriatic arthritis was erroneous because "'stable' does not mean that [his] prior condition remained at a certain level [or that] he no longer suffered symptoms from his multiple conditions."  (*Id.* at 16-17.)  Next, as for the ALJ's finding of improvement from treatment, Plaintiff again accuses the ALJ of cherry-picking isolated

- 8 -

examples of improvement while failing "to view any improvement in the context of the entire record." (*Id.* at 17-18.)  As for the ALJ's discussion of treatment for ulcerative colitis, Plaintiff argues this discussion was "not a sufficient reason to reject [his] symptom testimony" because he "did not testify that ulcerative colitis was his main impairment, and did not claim that that condition alone would keep him from working." (*Id.* at 18.)  Finally, Plaintiff argues the ALJ's finding of inconsistency with activities was flawed because the cited activities were not inconsistent with his testimony and do not establish an ability to perform work for a substantial part of the workday. (*Id.* at 18-19.)

      The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for discrediting Plaintiff's symptom testimony. (Doc. 16 at 4-10.)  The Commissioner's overarching argument is that the ALJ "provided the following reasons for discounting Plaintiff's testimony: (1) the objective medical evidence did not support the extent of his allegations; (2) Plaintiff's conservative treatment improved his symptoms; (3) certain inconsistencies between Plaintiff's subjective complaints and other evidence undermined his allegations; and (4) activities, such as his ability to move with his family out-of-state in 2016, playing basketball, and maintaining his yard, showed that he was not as limited as alleged.  The ALJ's reasons served as permissible grounds for discounting Plaintiff's testimony under the regulations and Ninth Circuit authority, and substantial evidence supported each reason." (*Id.* at 5.)  More specifically, as for the first reason (inconsistency with objective evidence), the Commissioner cites a variety of records showing benign or normal findings and then asserts that "despite Plaintiff's claims, the ALJ indeed connected the objective evidence to his subjective testimony of disabling pain and functional limitations." (*Id.* at 5-7.)  As for the second reason (improvement from conservative treatment), the Commissioner identifies various reasons why the ALJ's determination was supported by substantial evidence, including that "Plaintiff took relatively mild pain medications, and received spinal injections, to treat his degenerative disc disease and arthritic pain," that "Plaintiff reported improvement from his cervical and lumbar spine injections," that Plaintiff "report[ed] that radiofrequency ablation provided 90% relief,"

that Plaintiff "reported that his medication helped to control his pain," and that "[w]ith respect to Plaintiff's skin conditions, the ALJ found that the record also showed improvement with treatment, consisting of, for example, steroids, antimetabolites, and biologic tumor necrosis factor inhibitors." (*Id.* at 7-8.) As for the third reason (other inconsistencies), the Commissioner argues that the ALJ permissibly found a contradiction "between Plaintiff's allegations of nightly breathing difficulties and evidence in the record" and notes that "[a]gency policy and Ninth Circuit authority . . . endorse inconsistent statements as a permissible reason for discounting a claimant's testimony about his symptoms or limitations." (*Id.* at 8-9.) As for the fourth reason (activities), the Commissioner argues that, under Ninth Circuit law, daily activities may be impeaching even if they do not alone demonstrate an ability to sustain full-time work. (*Id.* at 9-10.)

In reply, Plaintiff accuses the Commissioner of invoking the wrong standard of review (Doc. 17 at 4-5 & n.3); reiterates his contention that the ALJ "failed to connect anything specific in the medical record to a specific inconsistency with anything specific within [his] symptom testimony" (*id.* at 5); reiterates his contention that "the ALJ's observations were improper cherry-picking when precedent requires the ALJ [to] review the record as a whole" (*id.* at 5-6); argues that the spinal imaging studies were not mild and reflected significant abnormalities (*id.* at 6); argues that "any perceived inaccuracies" regarding his claims of breathing difficulties "are irrelevant" because he did not testify about breathing difficulties during the hearing and his breathing difficulties are not "his main impairments" (*id.* at 7); advances another claim of impermissible cherry-picking by the ALJ (*id.* at 7-8); argues that the ALJ's finding of improvement from treatment was flawed because "the ALJ failed to view any limited improvement that [he] gained from treatment in the context of the entire record" (*id.* at 8); and argues there was no "disconnect between [his] disability and his limited daily activities" (*id.* at 8-9).

…

…

…

4.     Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.

First, it was permissible for the ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with the objective medical evidence in the record. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted). Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.") (citations omitted); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's finding of inconsistency is supported by substantial evidence. In a questionnaire asking him to identify his respiratory impairments, Plaintiff wrote "Nightly" in response to the question "How often do you have wheezing or breathing problems?" (AR at 373.) However, during meetings with medical providers, Plaintiff consistently denied experiencing any respiratory issues. (*Id.* at 794 [June 21, 2019 record]; *id.* at 920 [September 12, 2019 record: "Denies Shortness of breath, Chronic Cough"].) Additionally, Plaintiff's chest and lung examinations and x-rays were consistently unremarkable. (*Id.* at 845 ["Unremarkable study. No active chest disease."], *id.* at 1298 ["Non labored breathing,

1  equal chest rise bilaterally."]; *id.* at 1309 ["Non labored breathing, equal chest rise
2  bilaterally."].) It was rational for the ALJ to construe this objective medical evidence as
3  inconsistent with Plaintiff's "nightly wheezing" claim in his questionnaire, and "[w]hen
4  evidence reasonably supports either confirming or reversing the ALJ's decision, we may
5  not substitute our judgment for that of the ALJ." *Ghanim v. Colvin*, 763 F.3d 1154, 1163
6  (9th Cir. 2014) (citation omitted). *See also Thomas*, 278 F.3d at 954 ("Where the evidence
7  is susceptible to more than one rational interpretation, one of which supports the ALJ's
8  decision, the ALJ's conclusion must be upheld.").

9    Notably, Plaintiff does not seem to dispute that the "nightly wheezing" claim in his
10 questionnaire was inconsistent with the objective medical evidence. Instead, Plaintiff
11 contends that because his claimed respiratory impairments were not his "main"
12 impairments and were not the subject of his hearing testimony, it is "irrelevant" that he
13 may have made inconsistent or exaggerated claims regarding them in his questionnaire.
14 (Doc. 17 at 7.) This argument is unavailing. Plaintiff cites no authority for the proposition
15 that a Social Security claimant has *carte blanche* to provide exaggerated claims so long as
16 the exaggerated impairments are not the "main" focus of the disability claim. Nor would
17 such a rule make sense. It is an accepted and common-sense principle that a factfinder may
18 choose to discount all of a witness's testimony once the factfinder has determined the
19 witness made a deliberately exaggerated claim. *Cf. Sawnick v. Comm'r of Soc. Sec.
20 Admin.*, 2023 WL 7538979, *8 (D. Ariz. 2023) ("[A] factfinder is entitled to discount the
21 credibility of a witness who has been shown to have testified in a false or exaggerated
22 manner even if the impeaching daily activities would not, alone, compel a finding of non-
23 disability.").

24   Additionally, putting aside the issue of respiratory impairments, the ALJ also
25 provided an extensive discussion of why Plaintiff's claimed mental impairments were
26 inconsistent with the objective medical evidence. (AR at 26-27.) Plaintiff's only rejoinder
27 as to this issue is that "[b]ecause this appeal is not based on [his] mental impairments, the
28 ALJ's rejection of those portions of [his] symptom testimony is irrelevant." (Doc. 12 at 14

- 12 -

n.6.) This argument fails for the same reason as Plaintiff's argument regarding his respiratory impairments—Plaintiff cannot avoid the consequences of the ALJ's inconsistency determination by contending that his appeal is not based on the testimony that was found to be inconsistent and exaggerated.[4]

Another of the ALJ's proffered reasons for the adverse credibility finding was that Plaintiff experienced improvement from conservative treatment. This is, in general, a permissible reason under Ninth Circuit law for discrediting a claimant's symptom testimony. *See, e.g., Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) ("[T]he ALJ pointed to Tommasetti's testimony that his severe diabetes was not a 'disabling problem,' was controlled by medication, and was not the reason he stopped working. This testimony undermines Tommasetti's prior claims that his diabetes was among his disabling conditions."); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including . . . the effectiveness of Fry's conservative treatment."). *See also* 20 C.F.R. § 1529(c)(3)(iv)-(v) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms . . . [and] [t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms.").

The ALJ's finding on this issue is supported by substantial evidence. Plaintiff wrote in his function report that his pain prevents him from standing in place or sitting for long periods, walking long distances, and lifting heavy items. (AR at 376.) Likewise, during the hearing, Plaintiff testified that he stopped working because he "was really in a lot of pain and [his] back hurt" and that his "pain never goes away." (*Id.* at 48-49.) However,

---

[4] Given these conclusions, it is unnecessary to resolve the parties' arguments regarding the sufficiency of the ALJ's other proffered bases for finding Plaintiff's testimony inconsistent with the objective medical evidence.

- 13 -

Plaintiff reported experiencing improvement from a number of different conservative pain-related treatments. For example, Plaintiff told a provider in May 2018 that he "does get some relief with Flexiril and naproxen" and did "not wish for any pain medication." (*Id.* at 443.) In January 2022, Plaintiff identified "meds" as one of the "[a]lleviating factors" for his pain, stated that he "[r]eceives 70-80% relief from medication," and stated that he "believes the medication is helping to control pain." (*Id.* at 1297, 1299.) As for his back pain, Plaintiff told a provider in May 2018 that he "received greater than 80% [relief] with [an] injection" (*id.* at 442) and then told a provider in August 2021 that he "got 100% relief from cervical facet [medial branch block] for five months." (*Id.* at 1309.) Finally, when asked during the hearing to identify what he does "to cope with the pain," Plaintiff answered: "Well, I'm not very good with the meds. I take them when I'm really hurting." (*Id.* at 51.) Against this backdrop, it was rational for the ALJ to conclude that Plaintiff experienced improvement from conservative pain-management techniques, which in turn undermined Plaintiff's testimony regarding the debilitating nature of that pain. The Court acknowledges that not all of the symptoms of Plaintiff's psoriatic arthritis appeared to be controlled by medication, but it was not erroneous for the ALJ to make such a finding with respect to Plaintiff's complaints of pain.

In any event, the ALJ also concluded that Plaintiff's mental impairments were controlled by conservative treatment. (*Id.* at 26 ["His mental impairments were initially managed through his primary care physician. In response to a May 2018 report of increased depression to his primary care physician, Sertraline was prescribed. By his next appointment, mood and affect were appropriate. Thereafter, there were minimal reports of mental health symptoms by the claimant or observation of such symptoms by his treaters. To be sure, the claimant even described his symptoms as stable. He exhibited only mild anxiety symptoms at his July 2019 consultative examination, despite his reports of incapacitating symptoms . . . . It was in August 2020, more than two years since he told his primary care physician that he was depressed, that the claimant first sought specific mental health treatment at Banner Health Center. There, he was prescribed additional

Case 2:23-cv-01256-DWL Document 18 Filed 04/18/24 Page 15 of 17

medications, which eventually he eventually ceased on his own accord because he did not like how it made him feel."].) Plaintiff does not acknowledge this portion of the ALJ's analysis in his briefs, presumably due to his position that "[b]ecause this appeal is not based on [his] mental impairments, the ALJ's rejection of those portions of [his] testimony is irrelevant." (Doc. 12 at 14 n.6.) But as discussed in earlier portions of this order, that position is mistaken. This provides another reason why the ALJ's finding of improvement from conservative treatment is supported by substantial evidence.

Given these conclusions, it is unnecessary to decide whether the ALJ's other proffered reasons for discounting Plaintiff's symptom testimony are also supported by substantial evidence. Any error as to that analysis was harmless because the ALJ identified multiple other clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.") (citations omitted); *Carmickle*, 533 F.3d at 1162-63 ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.") (citation omitted).

B. **RFC Determination**

Plaintiff's final argument is that "the ALJ's RFC determination was unsupported by substantial evidence when the ALJ failed to consider the impact of [his] extensive and long-standing psoriatic arthritis, Crohn's disease, and skin conditions, which caused chronic pain and the inability to sustain activities." (Doc. 12 at 20-21.) Plaintiff also contends that "[t]he ALJ did not rely on any medical opinions in this record" and "failed to identify

- 15 -

specific medical records in support of her finding that [he] could sustain light work, as the ALJ's own opinion about medical impairments was not substantial evidence to support agency action." (*Id.* at 21.) Plaintiff concludes that "[t]he ALJ's error was not harmless as the agency's vocational expert concluded a person with limitations in [Plaintiff's] symptom testimony could not sustain work." (*Id.* at 22.) In response, the Commissioner argues there was no error because the ALJ expressly considered "the impact of [Plaintiff's] skin conditions, Crohn's disease, and psoriatric arthritis when assessing his ability to perform light work." (Doc. 16 at 10-11.) The Commissioner also argues that the ALJ did rely on medical opinions when formulating the RFC, as evidenced by the fact that the ALJ deemed the state agency consultants' opinions "partially persuasive" but then included additional limitations in the RFC to account for impairments the consultants did not consider. (*Id.* at 11-12.) In reply, Plaintiff reiterates his contention that the RFC failed to reflect his course of treatment and "failed to take [his] cycle of impairment and inevitable absences from any job into consideration." (Doc. 17 at 9-10.)

The Court finds no error in the RFC formulation. The implicit premise underlying many of Plaintiff's arguments is that the ALJ should have accepted his symptom testimony and fashioned the RFC in accordance with it. (*See, e.g.,* Doc. 12 at 22, emphasis added ["The ALJ's error was not harmless as the agency's vocational expert concluded a person *with limitations in [Plaintiff's] symptom testimony* could not sustain work."].) But as noted in Part A above, the ALJ permissibly declined to credit Plaintiff's symptom testimony. *Cf. Sayer v. Kijakazi*, 2022 WL 1153944, *1 (9th Cir. 2022) ("Because the ALJ permissibly weighed Sayer's testimony, Sayer's challenges to the ALJ's residual functional capacity determination likewise fail.").

Plaintiff is also wrong to suggest that "[t]he ALJ did not rely on any medical opinions in the record." (Doc. 12 at 21.) As the Commissioner correctly notes, the ALJ partially credited the opinions of the state agency consultants before concluding the RFC should be fashioned in a manner that was *more* favorable to Plaintiff than the state agency consultants' opinions would have dictated. (*See, e.g.*, AR at 27-28 ["[T]he State agency

medical consultants . . . concluded that the claimant could perform light work with occasional postural activities, though on reconsideration the consultant found the claimant should not climb ladders, ropes, or scaffolds. . . . To be sure, a restriction to light work with additional postural and environmental limitations is appropriate, given the degenerative changes in the claimant's spine and hands with psoriatic flares when considered in light of the frequency with which providers noted normal gait, strength, and sensation. However, as set out at length above, the record establishes physical impairments not previously considered which, in turn, establish a need for greater limitation than was found by these consultants. Thus, a need for restrictions not accounted for in their findings is warranted. Because these findings are not wholly consistent with the present record, they are only partially persuasive."].) Plaintiff has not established this approach was erroneous. *See generally Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 18th day of April, 2024.

Dominic W. Lanza
United States District Judge